# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-2008

_____

United States of America

*Plaintiff - Appellant*

v.

Robin Sims

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: November 13, 2014
Filed: January 14, 2015

_____

Before BYE, SHEPHERD, and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

When a litigant bypasses a district court's discovery deadlines and belatedly attempts to introduce new evidence, the court has broad discretion to fashion an appropriate remedy. In this case, the district court[1] concluded that the proper remedy

_____

[1] The Honorable Dean Whipple, United States District Judge for the Western District of Missouri.

was excluding the late evidence. Reviewing under 18 U.S.C. § 3731, we conclude that decision did not exceed the court's discretion, and we affirm the judgment.

## I. Background

In June 2013, Robin Sims was arrested and charged with, among other things, being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). On August 21, 2013, a magistrate judge ordered that the government disclose all expert testimony to Sims by April 10, 2014, seven days before the final pretrial conference. Trial was set for April 28, 2014, 18 days after the disclosure date.

Immediately after arresting Sims, police officers sent a gun seized from him to a crime lab in Kansas City, Missouri, for DNA testing. An analyst at the lab, however, mistakenly believed that the lab did not have a DNA sample from Sims on file, so she could not compare his DNA to the DNA found on the gun. The analyst e-mailed a detective and informed him that she could not make the comparison, but the detective did not respond. Nor did the analyst hear from the federal prosecutors assigned to Sims's case.

Meanwhile, Sims and the government had been discussing a potential plea, and the discovery deadline for expert testimony passed. On April 14, 2014, two weeks before the trial date, Sims's lawyer told the government that Sims had decided not to plead guilty and had, instead, opted for trial. It was only then that the government contacted the crime lab and requested information about the status of the tests on the DNA taken from the gun. The lab then located a DNA sample from Sims that it had all along, and the government requested expedited testing. The government did not tell the court or Sims that it was awaiting DNA evidence, did not update its expert-witness list, and told the court at the April 17 pretrial conference that it was "definitely ready for trial."

On April 21, one week before the trial was to begin, the lab sent the government a report, which stated that Sims was the source of "the majority of the DNA on the gun" and that the chances of someone else having the same genetic pattern as Sims was "one in 64 quintillion."

The next day, April 22, the government sent Sims's attorney a copy of the lab report and the name and credentials of the expert witness the government would present at the trial. The government also filed a "Supplemental Notice of Expert Witnesses" that disclosed the new DNA expert witness. The same day, Sims moved to exclude the DNA evidence because of the late notice and argued that the government should have requested the lab results sometime in the preceding eight months instead of waiting until the week before trial. Sims asserted that he was prejudiced by the late disclosure because he had no time to review the evidence from the government, prepare questions for cross examination of the new witness, or hire his own expert to review the new evidence.

On April 24, the government responded by moving to continue the trial until June 9, 2014, a date within Sims's speedy-trial deadline, to give him time to review the new evidence. The same day, the government also filed a second supplementary notice of expert witnesses, naming two additional forensic specialists from the DNA lab in Kansas City.

The district court held a pretrial conference on April 25, 2014, during which the parties discussed Sims's motion to exclude the DNA evidence. Sims argued that the government was at fault for failing to contact the lab until after the April 10 deadline to disclose expert witnesses. Even with the report disclosed, Sims added, the government had not turned over the expert's notes, so he could not know the basis for the expert's opinion. Sims noted the damaging nature of the expert's report and argued that a continuance was an insufficient remedy. The government responded

that it had disclosed the evidence as soon as it received the report and insisted that a continuance was a "perfect alternative remedy" to exclusion of the evidence.

The district court sustained the motion and excluded the testimony. The court noted that, although the delay stemmed from the lab, the government was using the lab, "and if they can't do their work, then you pay the consequences." Because the government had failed to check on the DNA testing, which began in the summer of 2013, the court ruled that the government also was responsible for the delay. Had the government acted diligently, the court explained, "any confusion about a sample from Defendant" promptly would have been resolved. The court ruled that the government thus acted with reckless disregard for the expert deadline. The court also determined that the evidence would cause "extreme prejudice" to Sims, and that it was "unconscionable" for the government to introduce the evidence only days before the trial. The court rejected the government's proposal for lesser sanctions, concluding that exclusion "is the only way to remedy the prejudice" to Sims "and to deter future discovery violations." The government requested an interlocutory appeal.

## II. Discussion

On appeal the government maintains that the district court's exclusion of the DNA evidence was too harsh a sanction and asserts that the court should have used "the least severe sanction which will adequately punish the government and secure future compliance." United States v. DeCoteau, 186 F.3d 1008, 1010 (8th Cir. 1999). The government insists that a continuance was an adequate remedy because Sims would have had time to review the evidence, hire an expert of his own, and prepare for cross examination, and because continuing the trial would not have run afoul of Sims's right to a speedy trial.

This court reviews the district court's imposition of sanctions, and the court's choice of sanction, for abuse of discretion. United States v. Polk, 715 F.3d 238, 249

(8th Cir. 2013). A district court has broad discretion to sanction a party for failure to comply with discovery orders. See United States v. Davis, 244 F.3d 666, 670 (8th Cir. 2001); Fed. R. Crim. P. 16(d)(2)(C) (providing for exclusion of evidence not disclosed pursuant to discovery order). When reviewing whether the sanction imposed evinces an abuse of discretion, we look at three factors: 1) the reason, or reasons, for the delay in production of the evidence, including whether the government acted in bad faith; 2) whether the defendant was prejudiced; and 3) whether a lesser sanction would secure future compliance by the government. See United States v. Amaya, 750 F.3d 721, 727 (8th Cir. 2014).

With those principles in mind, we conclude that the district court did not abuse its discretion. First, the district court concluded that the government had acted in reckless disregard of the discovery deadline by failing to check on the DNA results with the lab. This finding is supported by the undisputed fact that the government informed the court at the April 17, 2014, pretrial conference that it was "definitely ready for trial," though it was awaiting the DNA results. Adding to that, the government filed a *second* supplemental notice, after Sims had moved to exclude the DNA evidence, attempting to add more expert witnesses. That notice was filed only four days before the trial was set to begin and a full two weeks after the April 10 deadline. These actions confirm the district court's conclusion that the government showed more than just negligence in missing the discovery deadline.

We also agree that Sims was prejudiced by the late disclosure. The DNA evidence would have played a key part in Sims's prosecution on the firearm charge. By withholding that evidence, the government made it impossible for Sims to review the new DNA evidence, prepare for cross examination, and hire his own expert witness to rebut the conclusions made by the government's expert before trial.

Although it is possible, as the government suggests, that a continuance would have alleviated some of the prejudice to Sims, the district court reasonably concluded

that a lesser sanction would not "secure future compliance" with court orders. See Taylor v. Illinois, 484 U.S. 400, 413 (1988) ("It may well be true that alternative sanctions are adequate and appropriate in most cases, but it is equally clear that they would be less effective than the preclusion sanction . . . ."). Though the district court did not have to remedy the situation by excluding the evidence and could have imposed an alternative sanction, the court had discretion to impose the sanction it did. See Davis, 244 F.3d at 673 (concluding that district court did not abuse its discretion by excluding evidence, rather than granting a continuance, because exclusion was "the least severe sanction likely to remedy the prejudice and deter future wrongdoing on the part of the government"); United States v. Wicker, 848 F.2d 1059, 1061 (10th Cir. 1988) (noting need in some cases for district court to exclude evidence "to maintain the integrity and schedule of the court"); United States v. Campagnuolo, 592 F.2d 852, 858 (5th Cir. 1979) (finding no abuse of discretion where district court suppressed evidence that government failed to disclose in violation of discovery order). The district court's decision to impose the harsher sanction in this case was not an abuse of that broad discretion.

### III. Conclusion

We affirm the judgment of the district court.

_____