# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-2921
_____

United States of America

*Plaintiff - Appellee*

v.

Michael John Walker

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: May 18, 2016
Filed: October 18, 2016

_____

Before RILEY, Chief Judge, COLLOTON and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

A jury convicted Michael Walker of being a felon in possession of a firearm and ammunition. Based on Walker's criminal history, the district court sentenced him to 20 years in prison under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e). On appeal, Walker challenges the denial of his motions to suppress evidence and to dismiss on speedy-trial grounds. He also argues that the district court abused its discretion by limiting his cross-examination at trial of one of the

government's witnesses, and by rejecting his proposed jury instructions. Finally, he contends that the district court erred by determining that he qualified as an armed career criminal. Having jurisdiction under 28 U.S.C. § 1291, we affirm Walker's conviction, but vacate his sentence and remand for resentencing.

## I. Background

On January 21, 2014, Walker was charged in a two-count indictment with being a felon in possession of a firearm, and being a felon in possession of ammunition, both in violation of 18 U.S.C. §§ 922(g) and 924(e). Walker made his initial appearance three days later, and, in mid-February, he filed several motions, including a motion to suppress evidence obtained during a traffic stop. In mid-June, the suppression motion was denied after an evidentiary hearing. Shortly thereafter, Walker's counsel moved on Walker's behalf for a competency evaluation. While the competency proceedings were pending, Walker moved to dismiss on speedy-trial grounds. In December, the district court found Walker to be competent, and denied his motion to dismiss. On January 5, 2015, the case proceeded to a jury trial, where Walker was convicted on both counts. In August, the district court sentenced Walker to 20 years in prison after determining that he qualified as an armed career criminal based on his prior Minnesota convictions for third-degree burglary, attempted aggravated robbery with a dangerous weapon, and second-degree burglary. Walker filed a timely notice of appeal.

## II. Discussion

### A. Motion to Suppress Evidence

During the suppression hearing before a magistrate judge, Minneapolis police officers James Golgart and Jeremy Foster testified as follows. In the early morning hours of September 30, 2013, Golgart and Foster were on patrol, when Walker,

driving a white BMW with a cracked windshield, passed their squad car. As the BMW passed Golgart and Foster, they could see that its windshield was cracked: Golgart stated that the crack started on the passenger side and "spider[ed]" over to the driver's side of the vehicle in such a manner that it obstructed the driver's view; Foster stated that the windshield was cracked on the passenger side, but that the crack did not extend all the way across the windshield. The officers followed the BMW for two blocks, during which time it blocked a crosswalk when it stopped at a traffic light. The officers initiated a traffic stop, and approached the BMW. As soon as the windows of the BMW were rolled down, they could both smell "fresh," i.e., unburned, marijuana, an odor they had been trained to detect during their training as police officers. Walker appeared to be very nervous. Golgart then decided to search the BMW, and both Walker and his passenger were secured in the squad car. During Golgart's search of the passenger compartment of the BMW, he did not find any marijuana, but he did find under the driver's seat a glass pipe and a rock-like substance he believed to be cocaine. At that point, Golgart informed Walker and the passenger that they were under arrest, and continued searching the BMW. In the trunk, Golgart discovered a 12-gauge shotgun, a box of shotgun shells in a bag from the sporting goods store Cabela's, and a high-capacity rifle magazine filled with ammunition. Golgart and Foster subsequently transported Walker and the passenger to the Hennepin County Jail, where jail personnel discovered marijuana in the passenger's anus.

Golgart acknowledged that, in 2010, he had been the subject of an internal affairs (IA) investigation regarding an incident in which he examined a suspicious suitcase without contacting the bomb squad. He testified that he was terminated from the police department after the investigators concluded that he had given a false statement during the IA investigation, but that his termination was later rescinded and replaced with a 40-hour suspension without pay for his failure to use proper discretion regarding the suspicious suitcase.

The magistrate judge recommended denial of Walker's suppression motion, reasoning that—whether or not the crack in the windshield actually obstructed Walker's vision—the officers' observations regarding the windshield provided a particularized and objective basis to stop the vehicle in order to determine whether there was a violation of Minnesota Statutes § 169.71(a)(1), which provides that a person shall not operate a motor vehicle with a windshield cracked to an extent to limit or obstruct proper vision. The magistrate judge further reasoned that the smell of marijuana and Walker's nervousness established probable cause for the warrantless search of the BMW under the automobile exception to the Fourth Amendment's warrant requirement. Walker objected to the recommendation, contending that the magistrate judge had accepted Golgart's testimony as credible without considering the IA investigation. The district court summarily overruled Walker's objection, adopted the recommendation, and denied the suppression motion. The district court later denied Walker's motion to reopen the suppression issue to present a newspaper article discussing the fact that crosswalks in Minneapolis required frequent repainting.

On appeal, Walker does not dispute that the BMW's windshield was cracked; he asserts only that the windshield was not cracked to such an extent that it impeded the driver's view, and he argues that Golgart therefore lacked a valid basis for the traffic stop. Walker also argues that Golgart impermissibly extended the traffic stop beyond the time necessary to investigate the cracked windshield, citing Rodriguez v. United States, 135 S. Ct. 1609, 1614 (2015), which held that an officer's authority for conducting a traffic stop ends when tasks related to the traffic infraction are, or reasonably should have been, completed.

"We review the denial of a motion to suppress *de novo* but the underlying factual determinations for clear error, giving due weight to inferences drawn by law enforcement officials." United States v. Hurd, 785 F.3d 311, 314 (8th Cir. 2015) (quoting United States v. Clutter, 674 F.3d 980, 982 (8th Cir. 2012)). We will affirm unless the denial of the motion is unsupported by substantial evidence, is based on an

erroneous interpretation of the law, or it is clear, based on the entire record, that a mistake was made. United States v. Zamora-Lopez, 685 F.3d 787, 789 (8th Cir. 2012) (citing United States v. Payne, 534 F.3d 948, 950–51 (8th Cir. 2008)).

"Under the Fourth Amendment, a traffic stop is reasonable if it is supported by either probable cause or an articulable and reasonable suspicion that a traffic violation has occurred." United States v. Washington, 455 F.3d 824, 826 (8th Cir. 2006). Any traffic violation, regardless of its perceived severity, provides an officer with probable cause to stop the driver, but the officer must have an objectively reasonable basis for believing that the driver has committed a violation. Id.; see also United States v. Jones, 275 F.3d 673, 680 (8th Cir. 2001). Here, the district court accepted as credible Golgart's testimony that he believed, based on his observations, that the crack in the BMW's windshield obstructed the driver's view. United States v. Frencher, 503 F.3d 701, 701 (8th Cir. 2007) ("A credibility determination made by a district court after a hearing on the merits of a motion to suppress is 'virtually unassailable on appeal.'" (quoting United States v. Guel-Contreras, 468 F.3d 517, 521 (8th Cir. 2006))). Even if Golgart was mistaken, his observations regarding the severity of the crack provided a reasonable basis for his belief that Walker was violating § 169.71(a)(1). See United States v. Smart, 393 F.3d 767, 771 (8th Cir. 2005) (possibility that defendant had not violated traffic law, and subsequent determination that he had not, did not mean that officer's initial suspicion of violation was unreasonable).

Walker also contends that Golgart impermissibly extended the traffic stop beyond the time necessary to investigate the cracked windshield. In Rodriguez, the Supreme Court held that a police officer may conduct checks unrelated to a traffic stop, but he may not do so in a manner that prolongs the stop, "absent the reasonable suspicion ordinarily demanded to justify detaining an individual." Rodriguez, 135 S. Ct. at 1615. Under the automobile exception to the Fourth Amendment's warrant requirement, a police officer who has lawfully made a roadside stop of a vehicle may search the passenger compartment and trunk of that vehicle if probable cause exists

to believe that contraband or evidence of criminal activity is located inside the vehicle. United States v. Caves, 890 F.2d 87, 89 (8th Cir. 1989). Probable cause for a search under the automobile exception exists if the facts and circumstances known to the officers when they began the search were sufficient in themselves for a person of reasonable caution to believe that contraband or evidence of criminal activity was present in the vehicle. Id. at 90. The odor of unburned marijuana can be highly probative in establishing probable cause for a search. See Johnson v. United States, 333 U.S. 10, 13 (1948) (presence of odor, testified to by witness who is qualified to know that odor is distinctive to forbidden substance, might be persuasive evidence of probable cause for search); United States v. Smith, 789 F.3d 923, 928–29 (8th Cir. 2015) (holding that the smell of marijuana combined with the credible testimony of a police officer is sufficient to establish probable cause); Caves, 890 F.2d at 91 (odor of burnt marijuana emanating from driver is less probative of existence of unused marijuana in vehicle than would be odor of unburned marijuana emanating from both driver and vehicle); see also United States v. Gerard, 362 F.3d 484, 489 (8th Cir. 2004) (noting that other circuits have held odor of marijuana, standing alone, is sufficient to support probable cause). Here, Golgart smelled unburned marijuana immediately after Walker opened the windows of the BMW. This information provided Golgart a basis to further detain Walker that was independent of the cracked windshield, and it also provided probable cause to search the car. Because both the traffic stop and the search of the BMW were lawful, the district court did not err in denying Walker's suppression motion.

Walker also challenges the district court's denial of his motion to reopen the suppression issue. We review the denial of a motion to reopen a suppression issue for abuse of discretion. United States v. Chavez Loya, 528 F.3d 546, 555 (8th Cir. 2008). The only evidence Walker sought to present related to the allegation that he was blocking a crosswalk at or near the time of the traffic stop. Given that the district court determined that the traffic stop was valid based on the crack in the BMW's windshield, we cannot say that the court abused its discretion by denying his motion

to reopen, as the evidence regarding the crosswalk would have had no impact on the court's ruling.

B.  Motion to Dismiss

On June 24, 2014, two weeks after the denial of Walker's suppression motion, the government filed its motions in limine in anticipation of the then-scheduled June 30 trial date.  The next day, Walker's counsel moved for a competency evaluation, and then moved to withdraw as counsel.  The district court granted the motions, directed the Attorney General to conduct an evaluation, and ordered that the report be returned "within 30 days or as soon as possible."  However, Walker was not transported to the Metropolitan Correctional Center (MCC) in Chicago, Illinois, for the evaluation until late August.  On September 16, the district court granted MCC's request for a 15-day extension to complete Walker's evaluation, and ordered that the report be returned by October 31.  The district court received the report via email on November 14, and, approximately 10 days later, conducted a competency hearing.  On December 1, the court entered an order, finding that Walker was competent.

In the meantime, on November 17, Walker, through new counsel, moved to dismiss the case, contending that the delay occasioned by the competency proceedings violated his right to a speedy trial under both the Speedy Trial Act, 18 U.S.C. § 3161(c)(1) (trial shall commence within 70 days from, as relevant, date defendant appeared before judicial officer), and the Sixth Amendment.  The district court denied the motion.  Thereafter, Walker responded to the government's motions in limine, which were resolved on December 30.  The trial commenced on January 5, 2015.

On appeal, Walker argues that neither the approximately 60-day delay in his transportation to MCC, nor the 14 days by which MCC's report exceeded the district court's deadline, should be excluded from the speedy-trial computation under the Speedy Trial Act.  His arguments, however, are foreclosed by United States v.

McGhee, 532 F.3d 733 (8th Cir. 2008). In McGhee, the district court ordered a competency evaluation in August; in October, the defendant, still awaiting transportation for the evaluation, moved to withdraw his competency motion. The court denied the motion and ordered that the defendant be transported. The evaluation report—dated in December—was filed in early January. Id. at 736–37. This court concluded that the time periods while the defendant was awaiting transportation for the evaluation and while the evaluation was being completed, as well as the time period between the date on the report and its filing, were all excluded from the speedy-trial computation under the Speedy Trial Act because they were part of the competency proceedings, whether or not the time periods were reasonable. Id. at 736–38 (reviewing district court's legal conclusions de novo); see also 18 U.S.C. § 3161(h)(1)(A) (excluding delays caused by proceedings to determine defendant's mental competency). Walker's attempts to distinguish McGhee are unavailing, and we cannot discern any material differences between the facts in McGhee and the facts in this case. Thus we conclude that there was no violation of the Speedy Trial Act.

Walker also argues that his Sixth Amendment speedy-trial right was violated. The Sixth Amendment guarantees a criminal defendant the right to a speedy trial. U.S. Const. amend. VI; Doggett v. United States, 505 U.S. 647, 651 (1992). "[I]t is an unusual case" in which a defendant's Sixth Amendment speedy-trial right was violated but the Speedy Trial Act was not. United States v. Thirion, 813 F.2d 146, 154 (8th Cir. 1987). To determine whether there has been a Sixth Amendment violation, we balance four factors: (1) the length of delay; (2) the reason for the delay; (3) defendant's assertion of his right; and (4) prejudice. Barker v. Wingo, 407 U.S. 514, 530 (1972).

As to the first factor, the defendant must allege that "the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay" in order to trigger the remainder of the Barker analysis. United States v. DeGarmo, 450 F.3d 360, 364–65 (8th Cir. 2006) (quoting Doggett, 505 U.S.

at 651–52).  If this initial showing is made, the court will consider the extent to which the delay stretches beyond the "bare minimum" needed to trigger judicial examination. Id. at 365.  "A delay approaching a year may meet the threshold for presumptively prejudicial delay requiring application of the Barker factors."  United States v. Titlbach, 339 F.3d 692, 699 (8th Cir. 2003); see also Doggett, 505 U.S. at 652 n.1 (noting that lower courts had generally found delay presumptively prejudicial "at least as it approaches one year").  Here, the delay of approximately eleven and a half months between Walker's indictment and his trial meets the threshold, but barely.

As to the second factor, the court must determine whether the government or the defendant was "more to blame" for the delay.  United States v. Rodriguez-Valencia, 753 F.3d 801, 806 (8th Cir.), cert. denied, 135 S. Ct. 390 (2014).  Here, Walker was responsible for most of the delay, which was occasioned by his motions to suppress evidence, for a competency evaluation, and to dismiss.  See McGhee, 532 F.3d at 739 (concluding that defendant was responsible for delays by motions for competency evaluation and to dismiss indictment on speedy-trial grounds).  Further, there is no evidence that the government intentionally caused any delay in order to gain a tactical advantage.  See id.

As to the third factor, Walker asserted his speedy-trial right in due course on November 17, three days after MCC returned its report regarding his competency. See id. (defendant asserted his speedy-trial right upon return from competency evaluation).  As to the fourth factor, Walker asserts that he was prejudiced by the delay due to the "ennui of waiting," but he does not argue that his defense was impaired by the delay.  His "ennui," without more, is insufficient to demonstrate prejudice.  See id. at 740 ("although anxiety and concern are present in every case, this alone does not demonstrate prejudice"; noting that defendant had not shown any "actual prejudice").

Thus, considering the <u>Barker</u> factors and the facts here, we conclude that Walker's Sixth Amendment speedy-trial right was not violated, and we affirm the denial of his motion to dismiss.

C. Limitations on Cross-Examination

Shortly before Walker moved for the competency evaluation, the government filed its motions in limine, seeking, as relevant, to preclude Walker from introducing at trial evidence regarding the IA investigation, and to preclude him from relitigating the lawfulness of the traffic stop. The district court granted the motion, reasoning that the IA investigation was only "marginally relevant" and would likely confuse the jury, and that the lawfulness of the traffic stop had already been determined. On appeal, Walker contends that cross-examination regarding the IA investigation was necessary to impeach Golgart's basis for the traffic stop, and to show that he had a "habit of inaccuracy."

The Confrontation Clause of the Sixth Amendment guarantees a criminal defendant the right to confront the witnesses against him. <u>Delaware v. Van Arsdall</u>, 475 U.S. 673, 678 (1986). However, trial judges retain "wide latitude" to impose reasonable limits on cross-examination based on concerns about, inter alia, confusion of the issues or interrogation that is only marginally relevant. <u>Id.</u> at 679. In order to establish a Confrontation Clause violation, the defendant must demonstrate that "a reasonable jury might have received a significantly different impression of a witness's credibility had counsel been allowed to pursue the proposed line of cross-examination." <u>United States v. Oaks</u>, 606 F.3d 530, 540 (8th Cir. 2010). We will not reverse a district court's decision to limit cross-examination "unless there has been a clear abuse of discretion and a showing of prejudice to the defendant." <u>Id.</u>

In the present case, the IA investigation was minimally relevant for the purpose of impeaching Golgart's testimony regarding the basis for the traffic stop, given that

the legality of the traffic stop had been determined during the pre-trial suppression proceedings. Cf. United States v. Hall, 171 F.3d 1133, 1146 (8th Cir. 1999) (concluding that district court did not abuse its discretion in limiting cross-examination regarding witnesses's prior untrue statement where the prior statement was in unrelated case and of only slight relevance). Furthermore, it was not likely that the jury would have received a significantly different impression of Golgart's credibility in light of his own trial testimony: Golgart acknowledged that, while searching the BMW, he handled the shotgun without wearing latex gloves, in violation of the police department's policy. Finally, there was a risk that cross-examination regarding the IA investigation would have confused the issues before the jury. It was unclear that the facts involved in this case bore any similarity to the facts ultimately relied on in the resolution of the IA investigation, and the ultimate resolution of the investigation was somewhat difficult to explain. Under these circumstances, cross-examination regarding the IA investigation would have diverted the jury's attention to a collateral matter with marginal relevance, and the district court did not abuse its discretion in limiting Walker's cross-examination on that issue. See United States v. Johnson, 968 F.2d 765, 766–67 (8th Cir. 1992) (district court did not abuse discretion by disallowing questioning on collateral issue of internal police investigation).

D. Rejection of Walker's Proposed Jury Instructions

Walker submitted two proposed jury instructions, Instruction 26 and Instruction 27. Instruction 26 read:

> When evaluating whether or not Mr. Walker was in knowing possession of the gun and ammunition in question, you are further instructed that the fact he drove the car when it was stopped, or that he obtained the car from the BMW dealership beforehand is not proof he possessed

what was discovered inside.  Knowingly driving that car
differs from knowing possession of its contents.

Walker contended that this instruction was necessary in light of <u>United States v.</u>
<u>Dooley</u>, 580 F.3d 682, 686–87 (8th Cir. 2009) (district court erred in instructing jury
that defendant was in constructive possession of firearm if he had control over vehicle
in which it was located; defendant's proximity to contraband does not establish
constructive possession when he is unaware of its presence).  Instruction 27 read:

> [T]he [g]overnment must prove beyond a reasonable doubt
> that Mr. Walker knowingly possess[ed] the firearm and
> ammunition.  The law does not permit the jury to presume
> his knowledge of illegality.  That is to say, it is the
> government's singular burden to prove Mr. Walker not only
> knowingly possessed the gun and ammunition, but that he
> also knew said possession was in violation of federal
> statutes.  This additional requirement of proof is imposed
> upon the government to assure that no conviction be had on
> the basis of an assumption that Mr. Walker necessarily
> understood the law when he may not have.

For support, Walker cited <u>United States v. Bruguier</u>, 735 F.3d 754, 760-61 (8th Cir.
2013) (en banc), which held that in order to be convicted of sexually abusing an
incapacitated victim, a defendant must have had knowledge of the victim's incapacity.
The district court summarily declined to give Instruction 26, and declined to give
Instruction 27 on the basis that <u>Bruguier</u> was inapplicable.  Rather, the court instructed
the jury that the essential elements of the offenses included, as relevant, that Walker
"knowingly possessed" the shotgun and ammunition.  The court further instructed the
jury that a person who, "although not in actual possession, has both the power and the
intention at a given time to exercise dominion or control over a thing, either directly
or through another person or persons, is then in constructive possession of it."  At the
joint request of the parties, the court also instructed the jury that "an act is done

knowingly if the Defendant was aware of the act and does not act through ignorance, mistake, or accident."

We review the district court's rejection of a defendant's proposed jury instructions for an abuse of discretion, recognizing that district courts have broad discretion in the formulation of instructions. We will affirm so long as the jury instructions, taken as a whole, fairly and adequately submitted the issues to the jury. United States v. Thunder, 745 F.3d 870, 873–74 (8th Cir. 2014).

First, as to Instruction 26, Walker's suggestion that his possession of the BMW was "not proof" that he possessed the items in the trunk incorrectly suggested that his control over the BMW could not constitute some evidence of his knowledge of the BMW's contents. See United States v. Ellis, 817 F.3d 570, 576 (8th Cir. 2016) (possession may be either actual or constructive; defendant may be in constructive possession of firearm if he has dominion and control over firearm itself, or over premises in which firearm was located; defendant's dominion and control over vehicle may indicate knowledge of vehicle's contents). Furthermore, while the instruction at issue in Dooley erroneously stated that constructive possession was established by mere proximity to the contraband, the jury in this case was correctly instructed that the government bore the burden to prove that Walker "knowingly possessed" the shotgun and ammunition, that his possession could be constructive, and that "ignorance, mistake, or accident" were insufficient to establish knowing possession. See United States v. Christy, 647 F.3d 768, 770 (8th Cir. 2011) (there is no error if instructions as whole adequately set forth law, afford counsel opportunity to argue defense's theory, and reasonably ensure that jury appropriately considers it).

Second, as to Instruction 27, Walker's suggestion that the government had the burden to prove he was aware of the "illegality" of his possession of the shotgun and ammunition was a plain misstatement of the law. This court has held that §§ 922 and 924 require neither "knowledge of the law nor an intent to violate it." United States

v. Farrell, 69 F.3d 891, 893 (8th Cir. 1995). Bruguier does not demand a different conclusion. In that case, this court held that the statute at issue required that the defendant have knowledge of the facts that made his conduct unlawful. Bruguier, 735 F.3d at 760–61. Similarly, in this case, the government was required to prove that Walker "knew of the facts that constituted the offense under § 922(g)," not that he knew his possession of the shotgun and ammunition were illegal. United States v. Miller, 646 F.3d 1128, 1132 (8th Cir. 2011) (citing United States v. Lippman, 369 F.3d 1039, 1043 (8th Cir. 2004)). Accordingly, we conclude that the district court did not abuse its discretion by rejecting Instructions 26 and 27.

E. Classification as an Armed Career Criminal

Under the ACCA, a person convicted of violating § 922(g) who has three previous convictions for, as relevant, a "violent felony" is subject to a 15-year mandatory-minimum prison term. 18 U.S.C. § 924(e)(1). In this case, the presentence report (PSR) stated that Walker qualified as an armed career criminal based on his 1987 Minnesota conviction for third-degree burglary, and his 1998 Minnesota convictions for attempted aggravated robbery with a dangerous weapon and for second-degree burglary.

In the district court, Walker objected to his classification as an armed career criminal, asserting, as relevant, that Minnesota's burglary statutes were "divisible" because they defined multiple methods by which burglary could be committed, and only one subsection of the definition of first-degree burglary included an element involving violence.[1] At the August 2015 sentencing hearing, the district court

---

[1]Walker also argued that his 1987 third-degree burglary conviction was too old to qualify as an ACCA predicate offense. However, there is no limitation under the ACCA as to the age of convictions qualifying as predicate offenses. See United States v. Rodriguez, 612 F.3d 1049, 1056 (8th Cir. 2010).

determined that Walker qualified as an armed career criminal, and sentenced him to two concurrent 240-month prison terms.

On appeal, Walker reasserts his arguments challenging his classification as an armed career criminal, including his argument that Minnesota's burglary statutes are divisible. This court reviews de novo the district court's determination that a defendant's prior conviction constitutes a violent felony under the ACCA. See United States v. Soileau, 686 F.3d 861, 864 (8th Cir. 2012).

"Burglary" is one of the offenses specifically enumerated as a violent felony under the ACCA. 18 U.S.C. § 924(e)(2)(B)(ii). The Supreme Court has defined generic "burglary" for ACCA purposes as "any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." Taylor v. United States, 495 U.S. 575, 599 (1990). The Supreme Court recognized in Taylor that "burglary," as used in the ACCA, encompasses "run-of-the-mill" burglaries, including burglaries that do not involve the use, or threatened use, of force. Id. at 597–98 ("Congress presumably realized that the word 'burglary' is commonly understood to include not only aggravated burglaries, but also run-of-the-mill burglaries involving an unarmed offender, an unoccupied building, and no use or threat of force.").

We recently held that Minnesota's current third-degree burglary statute is divisible because it sets forth multiple, alternative versions of the crime, only one of which qualifies as a violent felony. United States v. McArthur, Nos. 14-3335, 14-3336, 14-3367, 2016 WL 4698285, at *6-8 (8th Cir. Sept. 8, 2016); see Minn. Statutes § 609.582(3) ("Whoever enters a building without consent and with intent to steal or commit any felony or gross misdemeanor while in the building, or enters a building without consent and steals or commits any felony or gross misdemeanor while in the building, either directly or as an accomplice, commits burglary in the third degree").

-15-

Specifically, we concluded that the alternative defining burglary to include "enter[ing] a building without consent and with intent to steal or commit any felony or gross misdemeanor" qualified as a violent felony, while the alternative defining burglary as "enter[ing] a building without consent and steal[ing] or commit[ing] a felony or gross misdemeanor while in the building" did not qualify as a violent felony.[2] Id. (district court should have applied "modified categorical approach" to ascertain which alternative formed basis of prior conviction in order to determine whether conviction qualified as ACCA predicate offense). Minnesota's second-degree burglary statute in effect in 1998 contained similar language and thus was also divisible. See Minn Statutes § 609.582(2) (1997) ("Whoever enters a building without consent and with intent to commit a crime, or enters a building without consent and commits a crime while in the building, commits burglary in the second degree.")

It is questionable whether Walker sufficiently raised in the district court the particular concern at issue in McArthur, and he did not raise this argument on appeal. However, we exercise our discretion to consider the matter sua sponte under the plain error standard of review, and conclude that Walker is entitled to relief. See Silber v. United States, 370 U.S. 717, 717-18 (1962) (per curiam) ("Appellate courts . . . may, of their own motion, notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity, or public reputation of judicial proceedings." (quotation omitted)); United States v. Jones, 574 F.3d 546, 549 (8th Cir. 2009) (when defendant does not raise particular issue in district court, this court reviews for plain error; under plain error review, defendant must show (1) an error; (2) that is plain; and (3) that affects his substantial rights)

---

[2]Walker's 1987 conviction for third-degree burglary stemmed from his violation of the version of Minn. Statutes § 609.582(3) in effect 1986. As we noted in McArthur, the 1986 version of § 609.582(3) did not contain the second alternative. See McArthur, 2016 WL 4698285 at *7. We have previously held that, a conviction under the 1986 version of § 609.582(3) qualified as an ACCA predicate offense. United States v. Sonczalla, 561 F.3d 842, 846 (8th Cir. 2009) (conviction under Minnesota's 1986 third-degree burglary statute qualified as ACCA predicate offense).

-16-

(citation omitted). Because § 609.582(2) was divisible, the district court should have applied the modified categorical approach to ascertain which alternative of the statute formed the basis of Walker's conviction, and whether he thus qualified for enhanced sentences under the ACCA. See Henderson v. United States, 133 S. Ct. 1121, 1130 (2013) (it is enough that error be plain at time of appellate consideration); see also 18 U.S.C. § 924(a)(2) (violation of § 922(g) punishable by not more than 10 years in prison).

When applying the "modified categorical approach," the court may look to a limited class of documents to determine for what crime the defendant was convicted. Mathis v. United States, 136 S. Ct. 2243, 2249 (2016). In this case, the only evidence in the record establishing Walker's conviction for second-degree burglary came from the PSR, which described his conviction based on "court records." Without information specifically identifying the source of that description, we cannot rely on the assertions in the PSR to establish which alternative of the statute Walker was convicted of violating, and we therefore cannot conclude that his second-degree burglary conviction qualified as an ACCA predicate offense. United States v. Shockley, 816 F.3d 1058, 1063 (8th Cir. 2016).[3]

Accordingly we vacate Walker's sentence and remand to the district court for further proceedings. We note that Walker's objection to his classification as an armed

---

[3]On appeal, Walker also argues that his attempted robbery conviction and his second-degree burglary conviction did not qualify as separate ACCA predicate offenses because they were committed as part of a "pattern of continuous conduct." Because we vacate Walker's sentence on other grounds, we need not address this argument. In addition, we do not address Walker's argument—raised for the first time in his reply brief—that proposed amendments to the United States Sentencing Guidelines should have been applied in determining whether he was an armed career criminal. United States v. Wilkens, 742 F.3d 354, 360 n.2 (8th Cir. 2014) (this court generally does not address issues and arguments asserted for first time in reply brief (citation omitted)).

career criminal arguably did not raise the particular issue discussed in <u>McArthur</u>, and that the issue is now properly framed. Under these circumstances, we decline to impose limitations on the evidence the district court may consider on remand. <u>See</u> <u>United States v. King</u>, 598 F.3d 1043, 1050 (8th Cir. 2010) (declining to foreclose further development of record on remand where defense counsel failed to explain clearly objection to sentence enhancement in district court, and where issue was properly framed after appeal).

## III. Conclusion

For the foregoing reasons, we vacate Walker's sentence and remand for resentencing. We affirm in all other respects.

_____