# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-1696

_____

United States of America

*Plaintiff - Appellee*

v.

Robin M. Sims

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: November 16, 2016
Filed: February 2, 2017
[Published]

_____

Before RILEY, Chief Judge, WOLLMAN and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

This is Robin Sims' second time before the court. On the government's interlocutory appeal in 2014, we found that the district court's[1] exclusion of DNA

_____

[1]The Honorable Dean Whipple, United States District Judge for the Western District of Missouri.

evidence as a sanction for the government's late disclosure was not an abuse of discretion. The case then proceeded to trial, and a jury convicted Sims on all counts. Now, in Sims' post-judgment appeal, he argues that the delay created by the government's interlocutory appeal was a violation of his Sixth Amendment right to a speedy trial. Finding no such violation, we affirm.

## I. Background

We set forth a detailed description of the facts leading up to trial in our prior opinion, United States v. Sims (Sims I), 776 F.3d 583 (8th Cir. 2015), which we incorporate herein. Relevant facts are repeated here for context.

Sims was arrested on June 24, 2013, and an initial indictment followed on July 17, 2013. Pursuant to a superceding indictment, Sims was charged with three counts of conspiring to distribute, distributing, and aiding and abetting the distribution of heroin; and one count of being a felon in possession of a firearm. During the first scheduling conference in August 2013, the district court set trial for April 28, 2014, pursuant to Sims' request. It also ordered the government to disclose all expert evidence "no later than seven days before the pretrial conference."

Five days after the pretrial conference and six days before trial, the government first notified Sims of its intention to call a forensic analyst to testify that Sims was the source of "the majority of the DNA on the gun" that was seized from him. Sims moved to exclude the DNA evidence as untimely and the government responded by seeking a continuance of the trial, which Sims opposed. The district court granted Sims' motion, excluded the DNA evidence from trial, and denied the government's motion for a continuance.

On April 25, 2014, the government filed an interlocutory appeal, arguing that the district court's exclusion of the DNA evidence was too harsh of a sanction and it

should have continued the trial instead. After filing, the government sought and received three extensions of the deadline to file its opening brief, one extension of its reply deadline, and two extensions of the filing date for a petition for rehearing which was never filed. Sims sought reconsideration of the court's first grant of an extension in part on the ground that he wanted to go to trial. Reconsideration was denied. On January 14, 2015, we issued our opinion in Sims I affirming the district court's exclusion of the DNA evidence as a sanction for the government's non-compliance with the scheduling order.

First, in Sims I, we held that the district court did not abuse its discretion in concluding that the government had acted in reckless disregard of the discovery deadline. 776 F.3d at 586. We noted that although the gun was originally submitted to the crime lab for DNA testing in summer 2013, the analyst did not perform testing because she mistakenly believed she did not have Sims' DNA on file to use as a comparator. Id. at 584. She emailed the detective on the case and informed him that she could not make the comparison, but the detective did not respond. Id. Two weeks before trial, on April 14, 2014, the government contacted the lab to inquire about the DNA testing, and discovering that nothing had been done, requested expedited testing. Id. At a pretrial conference three days later, the government stated it was "definitely ready for trial," and did not mention the DNA evidence or forensic expert. Id. The government received the DNA report on April 21, 2014, and disclosed it and its expert to Sims and the court the following day. Id. After Sims moved to exclude the forensic expert, the government added two supplemental forensic specialists to its witness list just four days before trial. Id. at 585. The court found these facts "confirm[ed] the district court's conclusion that the government showed more than just negligence in missing the discovery deadline." Id. at 586.

The Sims I court also agreed with the district court that the late disclosure prejudiced Sims because "[t]he DNA evidence would have played a key part in Sims's prosecution on the firearm charge" and Sims had no opportunity to review or

challenge it. Id. The district court rejected the government's suggested lesser sanction of a continuance in part because "the Defendant does not want to further delay resolution of this case, and a delay should not be forced on him because of the government's conduct." We held that the district court did not abuse its discretion in refusing to continue the trial. Id.

Prior to the issuance of the mandate in Sims I, on February 4, 2015, Sims filed a pro se motion to dismiss the indictment as a violation of his speedy trial rights, which the district court denied for lack of jurisdiction. After the mandate issued, Sims, through counsel, moved to dismiss on speedy trial grounds. The district court denied the motion without discussion.

A jury trial began on May 11, 2015, and Sims was convicted on all counts. Sims now appeals the district court's denial of his motion to dismiss the indictment, arguing the government violated his Sixth Amendment right to a speedy trial by filing an interlocutory appeal of the district court's decision to exclude the DNA evidence.

## II. Discussion

"[W]e review the district court's findings of fact on whether a defendant's [Sixth Amendment] right to a speedy trial was violated for clear error but review its legal conclusions de novo." United States v. Wearing, 837 F.3d 905, 909 (8th Cir. 2016) (second alteration in original) (quoting United States v. Aldaco, 477 F.3d 1008, 1016 (8th Cir. 2007)). The Supreme Court has identified four factors, known as the Barker factors, to analyze whether a defendant's Sixth Amendment speedy trial right has been violated: "(1) whether delay before trial was uncommonly long; (2) whether the government or the criminal defendant is more to blame for the delay; (3) whether, in due course, the defendant asserted his right to a speedy trial; and (4) whether he suffered prejudice as a result of the delay." Aldaco, 477 F.3d at 1019 (citing Doggett

-4-

v. United States, 505 U.S. 647, 651 (1992)); see Barker v. Wingo, 407 U.S. 514, 530 (1972).

### 1. Length of Delay

"[T]he Sixth Amendment right to a speedy trial attaches at the time of arrest or indictment, whichever comes first, and continues until the trial commences." Wearing, 837 F.3d at 909 (alteration in original) (quoting United States v. Sprouts, 282 F.3d 1037, 1042 (8th Cir. 2002)).  Sims was arrested on June 24, 2013, and his trial began on May 11, 2015; thus, the delay was twenty-two and a half months.  Such a delay is "presumptively prejudicial" and stretches beyond the "bare minimum" needed to trigger judicial examination of the remaining factors.  United States v. Walker, 840 F.3d 477, 485 (8th Cir. 2016) (quoting United States v. DeGarmo, 450 F.3d 360, 364–65 (8th Cir. 2006)); see Doggett, 505 U.S. at 652 n.1 (noting that lower courts had generally found "delay 'presumptively prejudicial' at least as it approaches one year"); United States v. Shepard, 462 F.3d 847, 864 (8th Cir. 2006) (holding seventeen-month delay "compels us to look to the other factors").

The government argues that we should only consider the delay to be twelve and a half months because the remainder of the delay was attributable to Sims' request for a continuance of the trial date.  However, the "responsibility for the delay" should be considered under the second factor, not the first.  United States v. Erenas-Luna, 560 F.3d 772, 777 (8th Cir. 2009).  In any event, even the twelve-and-a-half-month delay would be sufficient to consider the remaining factors.  Walker, 840 F.3d at 485 (holding "delay of approximately eleven and a half months between Walker's indictment and his trial meets the threshold, but barely").

## 2. Reason for Delay

"As to the second factor, the court must determine whether the government or the defendant was 'more to blame' for the delay." Walker, 840 F.3d at 485 (quoting United States v. Rodriguez–Valencia, 753 F.3d 801, 806 (8th Cir. 2014)). Sims admits that approximately ten months of the delay is attributable to him, as he initially requested a continuance of the trial date. Therefore, the question is whether the government is blameworthy for the remaining twelve-and-a-half-month delay during which it sought an interlocutory appeal of the district court's exclusion of the government's DNA evidence.

In United States v. Loud Hawk, 474 U.S. 302 (1986), the Supreme Court acknowledged that delay caused by interlocutory appeal can be the basis for a Sixth Amendment speedy trial claim. See id. at 316 ("Under Barker, delays in bringing the case to trial caused by the Government's interlocutory appeal may be weighed in determining whether a defendant has suffered a violation of his rights to a speedy trial."). Although "an interlocutory appeal by the Government ordinarily is a valid reason that justifies delay," the court nonetheless should consider the "purpose and reasonableness" of the appeal by examining: "the strength of the Government's position on the appealed issue, the importance of the issue in the posture of the case, and—in some cases—the seriousness of the crime." Id. at 315.

Sims argues that the interlocutory appeal was necessary only because the government recklessly disregarded discovery deadlines and unreasonably delayed in procuring and producing the DNA evidence. The government was aware that Sims opposed further continuance of his trial, but, Sims argues, it nonetheless sought interlocutory review and six extensions of its filing deadlines on appeal. In fact, the government's brief on interlocutory appeal sought a continuance of the trial date, against Sims' wishes, to allow Sims more time to examine the late-produced evidence. According to Sims, the appeal was meritless, and the government pursued

the DNA evidence solely to ensure a conviction on the felon-in-possession charge because it carried the harshest sentence. The government responds that the DNA evidence was key to proving that Sims knowingly possessed the firearm, and, although the district court was ultimately affirmed, its appeal was not meritless.

Although the government's conduct demonstrates some indifference toward Sims' intent to go to trial forthwith, there is no evidence of "bad faith or dilatory purpose on the Government's part" in pursuing interlocutory appeal. Id. at 316. We agree with Sims that seeking six extensions in the prosecution of an interlocutory appeal despite Sims' insistence on a prompt trial is unreasonable, particularly where the appeal was premised on the government's admitted discovery delays. At most, however, this delay can be characterized as negligent. See Barker, 407 U.S. at 531 ("A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered . . . ." (footnote omitted)). In this case, any negligence is balanced by the fact that the interlocutory appeal, although ultimately unsuccessful, was not "clearly tangential or frivolous" to Sims' prosecution: It concerned the admissibility of evidence that Sims admits, and the Sims I court found, was central to the felon-in-possession charge. Loud Hawk, 474 U.S. at 316; Sims I, 776 F.3d at 586. As this charge carried with it the most severe sentence, it was "sufficiently serious" to justify the government's pursuit of an interlocutory appeal. Loud Hawk, 474 U.S. at 316 Even though the government's dilatory conduct necessitated the appeal, the interlocutory appeal itself was legitimate and pursued within a reasonable timeframe. Thus, the delay it caused does not deserve "any effective weight" in Sims' Sixth Amendment speedy trial claim. Id.

### 3. Assertion of Right to Speedy Trial

"The third <u>Barker</u> factor considers 'whether in due course the defendant asserted his right to a speedy trial.'" <u>Erenas-Luna</u>, 560 F.3d at 778 (quoting <u>United States v. Walker</u>, 92 F.3d 714, 718 (8th Cir. 1996)). Despite the government's argument to the contrary, the record reveals that as soon as the government suggested a continuance Sims frequently and consistently asserted his intent to go to trial without delay, including at the district court's hearing on the motion to exclude the DNA evidence, in Sims' motion for reconsideration of our decision to extend the due date of the government's opening brief, and in Sims' pro se and counseled motions to dismiss the indictment on speedy trial grounds. These multiple requests for a prompt trial suffice to establish that Sims adequately asserted his speedy trial right. <u>See</u> <u>Barker</u>, 407 U.S. at 529 (court evaluating third factor should "weigh the frequency and force of the objections as opposed to attaching significant weight to a purely pro forma objection").

### 4. Prejudice

Finally, the court must consider whether the delay prejudiced Sims. In doing so, the court should assess the interests served by the speedy trial right, which are "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." <u>Id.</u> at 532. Sims concedes that he suffered no actual prejudice as a result of the twelve-and-half-month delay caused by the interlocutory appeal. But, he argues that prejudice is not required, citing <u>Doggett</u>, 505 U.S. at 655 ("[C]onsideration of prejudice is not limited to the specifically demonstrable, and . . . affirmative proof of particularized prejudice is not essential to every speedy trial claim."). The government disagrees, arguing that "[a] showing of prejudice is required to establish a violation of the Sixth Amendment Speedy Trial Clause." <u>United States v. Mallett</u>, 751 F.3d 907, 914 (8th Cir. 2014) (alteration in original) (quoting <u>Reed v. Farley</u>, 512 U.S. 339, 353 (1994)).

Whether or not a showing of prejudice is required in every case, we have been clear that the degree of prejudice required, if any, depends on the defendant's showing under the preceding Barker factors. See Erenas-Luna, 560 F.3d at 780 (following "Doggett's instruction to vary the weight assigned to the presumption [of prejudice] according to the government's negligence and the length of delay"). Here, the twelve-and-a-half-month delay attributable to the government "was not so great that we are able to discount [Sims'] inability to show particularized prejudice from that delay." United States v. Williams, 557 F.3d 943, 950 (8th Cir. 2009) (holding sixteen-month delay caused by the government's negligence was insufficient where the defendant could show no prejudice). Moreover, given the length of the delay, Sims cannot rely solely on presumptive prejudice where there is no evidence that the interlocutory appeal was illegitimate, made in bad faith, or used to gain a tactical advantage. See Doggett, 505 U.S. at 657 ("To be sure, to warrant granting relief, negligence unaccompanied by particularized trial prejudice must have lasted longer than negligence demonstrably causing such prejudice."). Because Sims failed to show any particularized prejudice resulting from the delay, this factor does not weigh in his favor.

Weighing the Barker factors, the court concludes that Sims has not proved the government violated his Sixth Amendment right to a speedy trial. Given that only twelve and a half months of the pretrial delay was attributable to the government, Sims' failure to show that the government was at fault for pursuing the year-long interlocutory appeal or that the delay caused him prejudice is fatal to his claim.

### III. Conclusion

We affirm the district court's denial of Sims' motion to dismiss the indictment.

_____