# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1940

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Arkansas. |
| David Pardue, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: November 18, 2003
Filed:  April 8, 2004

_____

Before RILEY, RICHARD S. ARNOLD, and MELLOY, Circuit Judges.

_____

RILEY, Circuit Judge.

David Pardue (Pardue) was sentenced to 105 months imprisonment and three years supervised release for using the mail with the intent that a murder be committed. While Pardue was serving his supervised release, his probation officer filed a petition to revoke supervised release alleging Pardue had committed new state-law crimes of aggravated robbery and aggravated assault. Pardue later pled guilty to the state charges. Thereafter, the federal district court[1] (district court) revoked Pardue's supervised release and sentenced him to serve twenty-four months

_____

[1]The Honorable Jimm Larry Hendren, Chief Judge, United States District Court for the Western District of Arkansas.

imprisonment for the violation, to be served consecutively to the state sentence. We affirm.

## I.    BACKGROUND

In May 1991, Pardue was sentenced to 105 months imprisonment and three years supervised release for using the mail with the intent that a murder be committed, in violation of 18 U.S.C. § 1958. Pardue began his term of supervised release in May 1999. In October 2001, the State of Arkansas charged Pardue with aggravated robbery and two counts of aggravated assault. On May 15, 2002, Pardue's probation officer filed a Petition for Revocation (Petition). The Petition alleged Pardue violated the terms of his supervised release by (1) committing the state crimes, (2) failing to report to his probation officer, and (3) failing to notify the U.S. Probation Office of his change of address. The district court issued an arrest warrant for Pardue.

Federal agents arrested Pardue on August 2, 2002. On August 15, 2002, Pardue was transferred to state custody to allow the state to resolve its case against Pardue before the district court considered the Petition. On August 28, 2002, Pardue filed a pro se motion with the district court requesting a probable cause hearing. The district court did not conduct the hearing, because Pardue was in state custody. On January 8, 2003, Pardue posted bond on the state charges. The next day, Pardue returned to federal custody and made an initial appearance before a federal magistrate judge. The magistrate judge conducted a detention hearing, ordered Pardue be held, and scheduled a hearing on the Petition. The district court conducted a hearing on February 11, 2003, but ordered the revocation hearing be delayed until resolution of Pardue's state charges. Seven days later, a state judge ordered Pardue be returned to state custody. Pardue filed a pro se "Motion to Stop Custody Transfer." On March 4, 2003, the state judge again ordered Pardue be retained in state custody until March 7, Pardue's scheduled trial date, and thereafter be returned to federal custody. On

March 7, 2003, Pardue pled guilty to the three state charges and received a sentence of 288 months imprisonment with credit for 220 days served.

On April 2, 2003, the district court again held a hearing on the Petition. The government, without objection by Pardue, entered into evidence a copy of Pardue's state court judgment showing Pardue had pled guilty to aggravated robbery and aggravated assault. To prove Pardue failed to report to his probation officer and failed to notify the government of his change of address in violation of Pardue's conditions of release, the government called Pardue's probation officer as a witness. Finding Pardue violated three conditions of his supervised release, the district court sentenced Pardue to twenty-four months imprisonment, to be served consecutively to the state sentence. Pardue argued he should receive credit for time served, which the district court denied, finding such a determination would be left to the Bureau of Prisons.

On appeal, Pardue raises three arguments. First, Pardue claims the district court erroneously denied a probable cause hearing under Federal Rule of Criminal Procedure 32.1. Second, Pardue contends he was "shuttled" in violation of the Interstate Agreement on Detainers Act (IADA) and, as a result, the federal revocation order should be dismissed. Finally, Pardue argues the district court erroneously sentenced Pardue to twenty-four months and erroneously denied him credit for time served.

## II.    DISCUSSION
### A.    Probable Cause Hearing
Pardue claims the district court erroneously denied a probable cause hearing as required under the Federal Rules of Criminal Procedure. Federal Rule of Criminal Procedure 32.1(a)(1) provides, "A person held in custody for violating probation or supervised release must be taken without unnecessary delay before a magistrate judge." Section 32.1(b)(1)(A) states, "If a person is in custody for violating a

condition of probation or supervised release, a magistrate judge must promptly conduct a hearing to determine whether there is probable cause to believe that a violation occurred. The person may waive the hearing." Interpretation of the Federal Rules of Criminal Procedure is subject to de novo review. United States v. Roman-Zarate, 115 F.3d 778, 781 (10th Cir. 1997); see generally United States v. Vanhorn, 296 F.3d 713, 719 (8th Cir. 2002).

Our circuit has not addressed the applicability of Rule 32.1 to a person being held for an offense in addition to the probation or supervised release violation. The Second Circuit has held the provisions of Rule 32.1(a)(1) apply only to those individuals in custody solely for the violation of probation or supervised release. United States v. Sackinger, 704 F.2d 29, 30 (2d Cir. 1983) (affirming, and agreeing with the analysis in, United States v. Sackinger, 537 F. Supp. 1245, 1247-49 (S.D.N.Y. 1982)). Like the defendant in Sackinger, Pardue was not held solely for his violations of supervised release. Pardue was also being held on charges of committing the state law crimes of aggravated robbery and aggravated assault. Rule 32.1 exists to protect the probationer from undue federal incarceration and to protect the probationer's ability to defend the violation allegations. Sackinger, 537 F. Supp. at 1248. Because of Pardue's pending state charges, no undue federal incarceration occurred. We agree with the Second Circuit that the requirements of Rule 32.1(a)(1) do not apply in this situation.

We further note Pardue appeared with counsel before the district court or the magistrate judge three separate times, and Pardue never requested a Rule 32.1 hearing during any of these appearances. Accordingly, Pardue also waived his rights to a Rule 32.1 hearing. See Fed. R. Crim. P. 32.1(b)(1)(A); United States v. Abdul-Hamid, 966 F.2d 1228, 1231 (7th Cir. 1992). We find the district court did not err by not providing Pardue a Rule 32.1 hearing.

**B.    Interstate Agreement on Detainers Act**

Pardue concedes, correctly, the IADA may not apply to his situation as a pretrial detainee.  We review de novo a denial of a motion to dismiss an indictment based on an interpretation of the IADA.  United States v. Lualemaga, 280 F.3d 1260, 1263 (9th Cir. 2002).  The Supreme Court has decided "a detainer based on a probation-violation charge is not a detainer based on 'any untried indictment, information or complaint,' within the meaning of Art. III" of the IADA.  Carchman v. Nash, 473 U.S. 716, 726 (1985); see 18 U.S.C. app. § 2, art. III.  Similarly, our court has ruled the objectives of the IADA "have no application to a pretrial detainee who is merely awaiting trial and is not then subject to a term of imprisonment.  He has no immediate interest in any institutional treatment or program of rehabilitation." United States v. Harris, 566 F.2d 610, 613 (8th Cir. 1977); see also United States v. Taylor, 173 F.3d 538, 541 (6th Cir. 1999) (quoting United States v. Roberts, 548 F.2d 665, 669-70 (6th Cir. 1977) ("[P]retrial detainee awaiting his trial has not begun his 'term of imprisonment'" pursuant to the IADA)).

Pardue was a pretrial detainee held on state law charges and on federal violations of a supervised release term.  He was not subject to a "term of imprisonment," as the IADA requires, under either state or federal charges.  Pardue's transfers inured to his benefit, because the district court, using a preponderance of evidence standard, could have conducted a trial or revocation hearing on the supervised release violation the first time Pardue was brought before the court.  The district court instead decided to allow the state charges against Pardue to be resolved first.  This decision allowed Pardue, if he so chose, to make the State of Arkansas prove its case to a jury by proof beyond a reasonable doubt.  We conclude the IADA does not apply to Pardue, and offers him no relief.  We affirm the district court's denial of Pardue's motion to dismiss the Petition under the IADA.

## C.     Federal Sentence and Credit for Time Served

We review legal questions regarding the interpretation and application of the supervised release statutes de novo.  See United States v. Juan-Manuel, 222 F.3d 480, 485-86 (8th Cir. 2000) (in ruling on suspension of defendant's supervised release, holding "[w]hether the district court had the authority to impose the controverted tolling condition in the exercise of its discretion is a legal question subject to de novo review").

Pardue makes two arguments regarding the sentence imposed upon revocation of his supervised release.  First, Pardue argues the district court erred in sentencing him to twenty-four months in prison.  Second, Pardue argues he should receive credit for time already served.  Because Pardue did not present the first argument to the district court, we are limited to a plain error review.  United States v. Brown, 203 F.3d 557, 558 (8th Cir. 2000) (citing United States v. Montanye, 996 F.2d 190, 192 (8th Cir. 1993) (en banc)).  Pardue bases this first argument on his assertion that the state convictions should be dismissed due to the IADA violations.  Because we have concluded the IADA does not apply to Pardue's situation, any argument the district court erred in revoking Pardue's supervised release based on the state convictions is without merit.  The district court properly imposed its revocation sentence based on the commission of a felony, for which the Sentencing Guidelines permit a twenty-four month revocation sentence.  18 U.S.C. § 3583(e)(3); U.S.S.G. § 7B1.4.  Further, the district court correctly ordered the term of imprisonment to run consecutively to the state sentence.  U.S.S.G. § 7B1.3(f).

Second, Pardue claims the district court should have given him credit for time served under 18 U.S.C. § 3585(b).  Indeed, section 3585(b) calls for a defendant to be given such credit.  However, this determination, as the district court correctly observed, is properly left to the Bureau of Prisons.  United States v. Iversen, 90 F.3d 1340, 1344-45 (8th Cir. 1996) (noting the district court did not have authority under 18 U.S.C. § 3585(b) to credit the defendant for time spent in home detention during

a previous sentence, and such a claim should first be presented to the Bureau of Prisons).  A district court cannot apply section 3585(b) when sentencing, because computing "the credit must occur after the defendant begins his sentence."  United States v. Wilson, 503 U.S. 329, 333 (1992).  Administrative procedures exist within the Bureau of Prisons to review the Bureau's failure to credit the time Pardue has served, should such occur.  See Rogers v. United States, 180 F.3d 349, 358 (1st Cir. 1999) ("Once administrative remedies are exhausted, prisoners may then seek judicial review of any jail-time credit determination, by filing a habeas petition under 28 U.S.C. § 2241.") (citing Wilson, 503 U.S. at 335; 28 C.F.R. §§ 542.10-542.16).  The district court correctly left this credit calculation for time served issue to the Bureau of Prisons.

## III.   CONCLUSION

For the reasons stated, we affirm.

_____