# United States Court of Appeals
### For the Eighth Circuit

_____

No. 16-4503

_____

United States of America

*Plaintiff - Appellee*

v.

Ronald Allen Class

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: October 20, 2017
Filed: February 26, 2018

_____

Before LOKEN, GRUENDER, and BENTON, Circuit Judges.

_____

LOKEN, Circuit Judge.

Ronald Allen Class conditionally pleaded guilty to possession of a stolen firearm in violation of 18 U.S.C. § 922(j). He appeals the district court's[1] denial of

_____

[1]The Honorable Patrick J. Schiltz, United States District Judge for the District of Minnesota, adopting in part the Report and Recommendation of the Honorable Tony N. Leung, United States Magistrate Judge for the District of Minnesota.

his motion to suppress the firearm and other evidence seized during a roadside encounter with the St. Paul police. Reviewing the district court's legal conclusions *de novo* and its factual findings for clear error, we affirm. See United States v. Marasco, 487 F.3d 543, 547 (8th Cir. 2007) (standard of review).

## I. Background

On patrol the morning of October 2, 2015, St. Paul Police Officer Trygve Sand and his partner, Andrew Heroux, saw a Lincoln Town Car parked on the opposite side of the street. Its hood was raised, and two men standing in front of the grill appeared to be working on the engine. Officer Sand recognized the men -- Defendant Ronald Class and Patrick Hedican -- as prior narcotics offenders. Officer Sand had arrested Class for narcotics offenses in 2001 and 2005 and was familiar with Class's involvement in auto-theft, narcotics, and weapons offenses that included prior felony convictions. Days earlier, narcotics Officer Tony Holter had called to inform Sand that officers relying on an informant's tip had stopped Class on September 23 and recovered a nine-millimeter magazine from his vehicle, but no firearm.

Officer Sand made a U-turn, parked behind the Town Car, and turned on his squad car's emergency lights, activating its audio-video recording equipment. Officers Sand and Heroux exited the squad car and approached Class and Hedican, walking on opposite sides of the Town Car. In a brief discussion, Class told Sand he was working on the Town Car's belt, explaining it belonged to his father and had been in storage. Sand then asked Class, "Hey Ron, can you come back here and talk to me real quick?" Class followed Officer Sand to the front of his squad car, where Sand asked if Class had been in touch with Officer Holter. Class's response is mostly inaudible on the audio recording. Officer Sand asked Class if he had any "bazookas" on him. Class replied "no." Officer Sand asked, "Mind if I check you out real quick?" Sand then patted down Class. He did not find anything that felt like a

weapon but reached into Class's pant pocket and retrieved a small amount of marijuana.

Officer Sand then locked Class in the squad car, explaining he was not under arrest. Sand walked to the front of the Town Car, brought Hedican around to the side of the car, and patted him down. Sand then walked back to the front of the Town Car, looked down into the car's exposed engine compartment, and called Officer Holter to advise that he had detained Class and Hedican. During the phone conversation, Sand saw a small, clear bag tucked between the radiator and front grill containing a substance he suspected was methamphetamine. He told Holter, "[a]s I'm talking to you, I see he ditched some dope in the grill of this car." At the suppression hearing, Sand testified he did not need to manipulate the engine compartment to see the bag. He simply looked straight down into the compartment and spotted the drugs on the passenger side of the compartment.

After completing his call to Officer Holter and requesting a camera crew, Officer Sand confronted Hedican, who denied knowledge of the methamphetamine. Sand returned to his squad car and read Class <u>Miranda</u> warnings.[2] Class claimed he knew nothing about the methamphetamine. Repeatedly asked what else might be in the car, Class eventually said there might be a gun under one of the seats. Sand returned to the Town Car, looked through the driver's side window, and saw what appeared to be a white shirt or rag covering a large object. Sand entered the car and found a .25 caliber semiautomatic handgun under the white cloth. Further search of the Town Car uncovered evidence of narcotics trafficking. Class made incriminating

---

[2]Officer Sand slightly misstated one of the warnings, reading "anything you *can* say and *will* be used against you in a court of law" (emphasis added). In a footnote, Class argues that this mistake is an independent basis for suppressing his post-<u>Miranda</u> statements. This unsupported argument is without merit. <u>See</u> <u>Florida v. Powell</u>, 559 U.S. 50, 60-61 (2010). It also does not comply with Fed. R. App. P. 28(a)(8)(A).

statements before being transported to a local hospital after paramedics arrived and advised that his colostomy bag needed to be reattached.

Indicted for being a felon in possession of a firearm and ammunition, Class moved to suppress the methamphetamine, his post-<u>Miranda</u> statements to Officer Sand, and the firearm seized from the Town Car. The magistrate judge held an evidentiary hearing and recommended denying the motion. Class objected, raising numerous issues, though he conceded the initial encounter was consensual. The district court concluded that Officer Sand lacked reasonable suspicion that criminal activity was afoot or that Class was armed and dangerous. Therefore, the pat down search followed by detention in the back seat of the squad car violated Class's Fourth Amendment right to be free from unreasonable search and seizure.[3] However, the district court concluded, Officer Sand's discovery of methamphetamine in the Town Car's exposed engine compartment was lawful under the plain view doctrine and was not "meaningfully connected" to the prior constitutional violation. Therefore, the court adopted the magistrate judge's recommendation and denied the motion to suppress.

## II. Discussion

The district court found that the small bag of methamphetamine was in plain view when Officer Sand looked down into the Town Car's exposed engine compartment. Under the plain view doctrine, "if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant." <u>Minnesota v. Dickerson</u>, 508 U.S. 366, 375 (1993). The district court concluded that Officer Sand was in a lawful position to view the bag

---

[3]On appeal, the government does not challenge this conclusion, and we do not address the issue.

because Class "had no reasonable expectation of privacy in an area of the car that he had left exposed to anyone walking by on a public street." We agree. Class notes that the engine compartment of a parked car is an area not typically visible to pedestrians, and argues that Officer Sand had no justification to move Class and Hedican out of the way and peer inside. But items that an officer finds while actively looking for them are still in plain view if the officer is standing in a place where he has a right to be. See United States v. Gillon, 348 F.3d 755, 760 (8th Cir. 2003).

Class primarily argues that Officer Sand's discovery of the methamphetamine was tainted by his prior unconstitutional conduct because Sand would not have made the discovery had Class not been unconstitutionally seized from his position in front of the Town Car. The unlawful seizure of methamphetamine furnished Sand probable cause for custodial interrogation of Class and search of the Town Car's interior. Therefore, Class argues, his post-Miranda statements and the firearm found in the vehicle must be suppressed as fruits of a poisonous tree. See generally Wong Sun v. United States, 371 U.S. 471, 484-85 (1963).

Though evidence seized in violation of the Fourth Amendment is subject to exclusion in a criminal prosecution, "[e]vidence should not be excluded . . . unless the illegality is at least a but-for cause of obtaining the evidence." United States v. Olivera-Mendez, 484 F.3d 505, 511 (8th Cir. 2007). "[T]he defendant bears the initial burden of establishing the factual nexus between the constitutional violation and the challenged evidence." Marasco, 487 F.3d at 547. Here, the district court concluded that Officer Sand's plain-view seizure of the bag of methamphetamine was not "meaningfully connected" to the prior unconstitutional search and seizure of Class because (i) Sand learned nothing from his frisk and detention of Class that enabled him to locate the methamphetamine, and (ii) even if Class was not detained and was standing in front of the Town Car, his assertion that he would have closed the open hood before Sand saw the bag of methamphetamine was not credible

-5-

because doing so would likely have aroused the officers' suspicion. We conclude these findings are not clearly erroneous.

Even if they lacked reasonable suspicion of ongoing criminal activity, Officers Sand and Heroux could approach Class and Hedican on a public street and request a consensual encounter. See, e.g. Florida v. Bostick, 501 U.S. 429, 434 (1991). During an initial exchange, Class told Officer Sand he was working on the Town Car's belt, giving Sand reason to approach the grill and look inside the engine compartment to verify a known drug dealer's explanation. Sand's access to the front of the car was lawful whether or not Class was detained. "There is no legitimate expectation of privacy shielding that portion of an automobile which may be viewed from outside the vehicle by either inquisitive passersby or diligent police officers." United States v. Martin, 982 F.2d 1236, 1240 (8th Cir. 1993) (quotation omitted). Invoking "common sense," Class argues that, had he been standing in front of his car, he would have shut its hood before Officer Sand had time to spot the methamphetamine. The district court properly rejected this as unlikely speculation. Having explained to Officer Sand he was having car trouble, a person with Class's known history of drug distribution would not likely have raised the officers' suspicion by abruptly closing the hood when Officer Sand peered into the engine compartment to confirm there was a mechanical issue.

On this record, we agree with the district court that Class failed to establish that Officer Sand's unconstitutional detention was at least a but-for cause of Officer Sand's lawful plain-view seizure of methamphetamine in the engine compartment. Accordingly, the district court properly denied Class's motion to suppress. The judgment of the district court is affirmed.

_____