# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 17-3627

———————————————

United States of America

*Plaintiff - Appellee*

v.

Houston Oliver

*Defendant - Appellant*

——————————

Appeal from United States District Court
for the District of Minnesota - St. Paul

——————————

Submitted: October 15, 2019
Filed: February 19, 2020

——————————

Before SMITH, Chief Judge, LOKEN and GRUENDER, Circuit Judges.

——————————

GRUENDER, Circuit Judge.

Houston Oliver appeals his conviction for conspiracy to distribute five kilograms or more of a mixture and substance containing a detectible amount of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846.  Oliver

challenges a number of the district court's[1] pretrial rulings, argues the court failed to properly instruct the jury, challenges the sufficiency of the evidence, and argues that his counsel rendered ineffective assistance. We affirm.

**I.**

On November 25, 2014, police received information from a "confidential reliable informant" that Oliver and his co-conspirators Desmond Williams and Jimmy Green would be mailing packages of cocaine to Minnesota from Maricopa, Arizona. As a result of this information, the police contacted a postal inspector who found two packages in the Minnesota post office sent from Arizona—one from Maricopa, Arizona and another with similar handwriting from Chandler, Arizona. After obtaining a search warrant, police officers opened the packages and found cocaine inside each package.

After the seizure of the packages, the informant told police that Oliver would be transporting cocaine in a BMW that would arrive in Minneapolis on November 30, 2014. On the predicted date, police officers in Minneapolis stopped and impounded a BMW that belonged to Oliver and was being driven by Sharrod Rowe. A few days later, after obtaining a warrant, the police searched the vehicle and discovered six kilograms of cocaine in the trunk. That same day, police obtained and executed a number of warrants to search locations associated with Oliver, including a hotel room he rented. During the search of the hotel room, the police recovered certain personal items, including cell phones, but did not recover any drugs.

Oliver was first indicted in May 2015 for conspiracy to distribute cocaine, but the Government moved to dismiss the indictment without prejudice under Federal

---

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

Rule of Criminal Procedure 48(a) in March 2016. The district court granted the Government's motion to dismiss the same day it was filed.

A grand jury indicted Oliver a second time for conspiracy to distribute cocaine on September 27, 2016. Oliver moved to dismiss the second indictment and filed pretrial motions seeking disclosure of the informant's identity and suppression of the roadside search of his BMW and the search of his hotel room. The district court denied these motions.

At trial, Oliver's co-conspirator Williams testified that he made multiple trips to Arizona at Oliver's request to transport cash for the purpose of buying drugs. Williams also testified that on November 24, 2014, he and another co-conspirator each mailed one package of cocaine from different towns in Arizona at Oliver's direction. At the conclusion of the Government's case, Oliver filed a motion for a judgment of acquittal, which was taken under advisement and later denied. The jury convicted Oliver of conspiracy to distribute cocaine.

After trial, Oliver again filed a motion for a judgment of acquittal under Rule 29 and, in the alternative, for a new trial under Rule 33. In his motions, Oliver claimed there was insufficient evidence to support his conviction because the Government's key witness—Williams—lacked credibility. The district court denied the motions. The court then sentenced Oliver to 204 months' imprisonment.

Oliver now challenges several aspects of his trial. He asserts that the district court erred in denying his pretrial motions to dismiss the second indictment, to disclose the identity of the informant, and to suppress the searches of his BMW and hotel room. He also asserts that the court should have given the jury an accomplice instruction regarding Williams's testimony, that his conviction should be reversed because the evidence against him was legally insufficient, that the district court erred in denying his motion for a new trial, and that he was prejudiced by ineffective assistance of counsel. We address each argument in turn.

## II.

### A.

Oliver argues that the district court erred in denying his motion to dismiss the second indictment because the district court improperly dismissed without prejudice the first indictment in March 2016. Oliver raises two arguments as to why the district court should have dismissed the second indictment: (1) Federal Rule of Criminal Procedure 48(a) does not permit dismissal without prejudice, so the dismissal of the first indictment had to be with prejudice[2]; and (2) even if Rule 48(a) permits dismissal without prejudice, the March 2016 motion to dismiss and resulting dismissal were done *ex parte*, constituting a due process violation and thus requiring the March 2016 dismissal to be treated as one with prejudice. We review both issues *de novo*. *Ramirez v. Sessions*, 902 F.3d 764, 770 (8th Cir. 2018) ("We review procedural due process challenges de novo . . . ."); *United States v. Pardue*, 363 F.3d 695, 697 (8th Cir. 2004) ("Interpretation of the Federal Rules of Criminal Procedure is subject to de novo review.").

First, Oliver argues that the text of Rule 48 only allows the district court to dismiss an indictment with prejudice. We have recognized, however, that the dismissal of an indictment at the request of the Government under Rule 48 prior to trial "does not bar subsequent prosecution for criminal acts described in that indictment." *DeMarrias v. United States*, 487 F.2d 19, 21 (8th Cir. 1973) (per curiam); *see, e.g.*, *United States v. Arradondo*, 483 F.2d 980, 983 (8th Cir. 1973) (noting that a dismissal pursuant to Rule 48(a) is without prejudice). These decisions bind us, and therefore Oliver's argument fails. *See Rodriguez de Henriquez v. Barr*, 942 F.3d 444, 446 (8th Cir. 2019) ("We are bound by [a] prior panel decision.").

---

[2]Rule 48 provides that "[t]he government may, with leave of court, dismiss an indictment, information, or complaint. The government may not dismiss the prosecution during trial without the defendant's consent." Fed. R. Crim. P. 48(a).

Second, Oliver's argument that his due process rights were violated with respect to the dismissal because he had no notice or opportunity to respond to the Government's motion is without merit. Although Oliver points out that the district court ruled on the Government's motion the same day it was filed, which did not allow him time to respond, Oliver could have challenged the ruling by filing a motion to reconsider because the Government's motion and district court's ruling were publicly filed. Fed. R. Crim. P. 12(b)(1); *see also Loctite Corp. v. Fel-Pro, Inc.*, 667 F.2d 577, 583 (7th Cir. 1981) (rejecting appellant's argument that a due process violation occurred in the form of a "sua sponte" dismissal because the appellant had an "opportunity to be heard" in the form of a motion to reconsider); *Barlau v. City of Northfield*, 568 F. Supp. 181, 186 (D. Minn. 1983) (holding that *ex parte* communications did not violate due process when the excluded party was aware of the communications and chose not to challenge them at a later hearing). Moreover, Oliver had an opportunity to challenge the dismissal when he filed his motion to dismiss the second indictment. For these reasons, Oliver suffered no procedural due process violation.

## B.

Oliver next argues that the district court should have granted his pretrial motion to disclose the identity of the informant or conduct an *in camera* examination regarding the informant. We review the district court's decision to deny the motion for an abuse of discretion. *United States v. Bradley*, 924 F.3d 476, 481 (8th Cir. 2019); *United States v. Mazzulla*, 932 F.3d 1091, 1100 (8th Cir. 2019).

The Government has a "privilege to withhold the identity of its confidential informants." *United States v. Harrington*, 951 F.2d 876, 877 (8th Cir. 1991). In order to override this privilege of nondisclosure, "defendants must establish beyond mere speculation that the informant's testimony will be material to the determination of the case." *Id.*; *see also United States v. Grisham*, 748 F.2d 460, 463 (8th Cir. 1984) (noting the "central importance of materiality" in determining whether to order disclosure of an informant's identity).

-5-

In his pretrial motion, Oliver argued that Williams was the confidential informant, and therefore the disclosure of the informant's identity was necessary because Williams was a material witness. Oliver asserted that the Government falsely stated there was a confidential informant "to avoid the need to identify Desmond Williams as the source of information [given] to police." The Government denied that Williams was the informant and invoked the informant privilege as to the identity of the informant.

Oliver bases his argument that Williams was the confidential informant on the assertion that Williams admitted at trial to mailing a "third package" of drugs, in conflict with a police officer's testimony that only described Williams as mailing the two packages on November 24, 2014.[3] Oliver claims that if the police lied about this "third package," this is evidence that the Government also lied about Williams not being the confidential informant. But Oliver mischaracterizes Williams's testimony. The trial transcript shows that Williams repeatedly stated he only remembered mailing two packages of cocaine at Oliver's direction. When asked about a "third box," Williams stated he "only recall[ed] shipping one from Maricopa and [one from] Chandler." In light of Williams's trial testimony, we agree with the district court that Oliver presented nothing more than speculation to refute the Government's assertion that Williams was not the informant. Therefore, we have no reason to believe the Government was anything but truthful, and the district court did not abuse its discretion in denying the motion. *See Harrington*, 951 F.2d at 877.

Moreover, "mere speculation" that undisclosed information is material "is not enough to compel . . . *in camera* review." *Mazzulla*, 932 F.3d at 1100; *see United States v. Van Brocklin*, 115 F.3d 587, 594 (8th Cir. 1997) (noting that "speculation" about the contents of material in the prosecution's possession "does not compel the district court to review" the material *in camera*). Thus, for the same reason it did

_____

[3]Assuming, without deciding, that we may rely on trial evidence in reviewing a district court's ruling on a pretrial motion, we proceed to review Oliver's argument insofar as it relies on Williams's trial testimony.

not abuse its discretion in denying Oliver's motion for disclosure, the district court did not abuse its discretion in denying Oliver's motion for *in camera* examination.

## C.

Oliver also argues that the roadside search of his BMW was unlawful because the police had no warrant or probable cause at the time of the stop. Specifically, he asserts that a police dog unlawfully searched inside the trunk of the BMW and alerted to drugs in a speaker. We review the district court's order denying the motion to suppress under two standards: its factual findings are examined for clear error and its legal conclusions are reviewed *de novo*. *United States v. Stevens*, 439 F.3d 983, 987 (8th Cir. 2006).

We agree with the district court that there was probable cause to search the vehicle, and therefore the search was lawful under the automobile exception to the warrant requirement. When "probable cause exists to believe that contraband . . . is located inside the vehicle," a police officer "may search the passenger compartment and trunk" under what is known as the "automobile exception." *United States v. Walker*, 840 F.3d 477, 483 (8th Cir. 2016). When the basis for a search is information supplied by an informant, such information may establish probable cause where the informant has a "track record of providing accurate information" or where the informant has accurately predicted certain events. *United States v. Winarske*, 715 F.3d 1063, 1067 (8th Cir. 2013). The confidential informant relied on by police here had already provided accurate information about the shipments of cocaine that were sent on November 24, 2014. Furthermore, the informant's tip that a BMW belonging to Oliver and transporting cocaine would arrive in Minneapolis on November 30th was corroborated when the BMW registered to Oliver arrived in Minneapolis on the predicted date. In other words, the informant had a track record of providing accurate information and correctly predicting certain events. Thus, the information the informant provided furnished probable cause to search the BMW under the automobile exception.

D.

Oliver next challenges the search of his hotel room, arguing that there was no probable cause to search and that the warrant did not allow for the seizure of cell phones. "Whether a search warrant is supported by probable cause is determined by the totality of the circumstances; resolution of the question by an issuing judge should be paid great deference by reviewing courts." *United States v. Kattaria*, 553 F.3d 1171, 1175 (8th Cir. 2009). The existence of probable cause "is a legal question reviewed de novo." *Odom v. Kaizer*, 864 F.3d 920, 923 (8th Cir. 2017). We review *de novo* whether a seizure violated the scope of a warrant and, therefore, violated the Fourth Amendment. *United States v. Montgomery*, 527 F.3d 682, 687 (8th Cir. 2008).

First, Oliver argues that the lack of information in the affidavit regarding the confidential informant's basis of knowledge of Oliver's drug trafficking undermined probable cause. "When [an] affidavit is based on information from an informant, the informant's reliability, veracity, and basis of knowledge are relevant to whether the affidavit provided probable cause to support the search." *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005). But an informant's "reliability" and "basis of knowledge" are not "entirely separate and independent requirements to be rigidly exacted in every case." *United States v. Stevens*, 530 F.3d 714, 718 (8th Cir. 2008); *see also United States v. Gladney*, 48 F.3d 309, 315 (8th Cir. 1995) (noting that "[t]he lack of specific details regarding basis of knowledge is not fatal in the probable cause analysis"). "An informant's track record of providing trustworthy information establishes reliability." *Bradley*, 924 F.3d at 480 (internal quotation marks omitted). The affidavit here described the information provided by the confidential informant, the informant's track record of reliability, and the investigative efforts to corroborate the informant's information, including the interception of the packages of cocaine mailed from Arizona to Minneapolis and of the BMW transporting cocaine. Given this evidence of the confidential informant's reliability, we find that the district court did not err in finding that the affidavit's failure to set forth the informant's basis of knowledge was not a "fatal flaw," and

-8-

there was probable cause to support a search. *See United States v. Anderson*, 933 F.2d 612, 615 (8th Cir. 1991).

Second, the warrant's reference to "other media" as items to be seized is broad enough to include cell phones. *See United States v. Gamboa*, 439 F.3d 796, 807 (8th Cir. 2006). The warrant authorized the seizure of "other media that show standing for an address, vehicle, the location of narcotics proceeds, or a connection between people, addresses and vehicles or that a crime has been committed." We agree with the district court that it is "self-evident" that a cell phone could constitute such media. Furthermore, we have held that cell phones may be seized when they may contain other items listed in a search warrant. *See Gamboa*, 439 F.3d at 807. (stating that "cell phones may well contain 'records of the use and purchase of controlled substances'" as stated in the search warrant). Even if we credited Oliver's argument that cell phones do not constitute media, the cell phones here could have contained other items specifically mentioned in the warrant, such as notes or photographs. Thus, the district court did not err in concluding that the police's seizure of Oliver's cell phones did not violate the Fourth Amendment.

E.

Oliver also argues that the district court erred when it failed to give an accomplice instruction before Williams testified, asserting that such an instruction is mandatory when the accomplice testimony is uncorroborated. Oliver did not request an instruction before Williams testified, and thus we review this claim for plain error. *See United States v. Joos*, 638 F.3d 581, 587-88 (8th Cir. 2011).

Oliver's argument fails on its own terms because Williams's testimony was corroborated by other evidence, such as the discovery of cocaine in Oliver's BMW. But even if Williams's testimony was uncorroborated, our precedents do not require that an accomplice instruction be given. *See, e.g.*, *United States v. Shriver*, 838 F.2d 980, 983 (8th Cir. 1988) (noting there is no "absolute and mandatory duty . . . upon the court to advise the jury by instruction that they should consider the testimony of

an uncorroborated accomplice with caution"). At any rate, the district court gave the pattern Eighth Circuit accomplice instruction in its final charge to the jury. We find no error, much less plain error, in the district court's failure to give *sua sponte* an accomplice instruction prior to Williams's testimony. *See id.*

F.

Next, we address Oliver's arguments that his conviction should be reversed because the evidence against him was legally insufficient and, in the alternative, that he should be awarded a new trial because the verdict was against the weight of the evidence.

Oliver's insufficient-evidence argument rests primarily on his assertion that Williams's testimony was entirely uncorroborated, but we have held that uncorroborated testimony of an accomplice "is sufficient to sustain a conviction if it is not otherwise incredible or unsubstantial." *See United States v. Crenshaw*, 359 F.3d 977, 988-89 (8th Cir. 2004) (emphasis omitted). We review the sufficiency of evidence *de novo*. *United States v. Polk*, 715 F.3d 238, 245 (8th Cir. 2013). We will uphold a guilty verdict "if there is any interpretation of the evidence that could lead a reasonable jury to convict." *United States v. Brandon*, 521 F.3d 1019, 1025 (8th Cir. 2008); *see also United States v. Stegmeier*, 701 F.3d 574, 578 (8th Cir. 2012) ("[C]redibility determinations . . . are left to the jury."). Reversal is warranted only where no reasonable jury could have found the defendant guilty beyond a reasonable doubt. *United States v. Donnell*, 596 F.3d 913, 924 (8th Cir. 2010).

Contrary to Oliver's contention, Williams's testimony was corroborated by independent evidence of Oliver's guilt. For instance, Williams testified that Oliver owned a BMW that he kept in Arizona, and the Government presented records at trial showing Oliver owned the BMW that was transporting cocaine. In addition, Williams testified that he mailed packages of cocaine from Arizona to Minneapolis at Oliver's direction, and the informant tipped off the police that Williams would send packages from Arizona to Minneapolis. The packages were later intercepted

and found to contain cocaine. Furthermore, Williams testified that Oliver let Williams stay in Oliver's house in Maricopa during his trips to buy drugs, and a police officer testified that a lease for a residence in Maricopa was in Oliver's name and contained handwriting very similar to the handwriting on the two packages of cocaine that were seized in the mail. Considering this evidence corroborating Williams's testimony that Oliver directed the selling and transporting of cocaine, and the overwhelming evidence of Oliver's participation in a conspiracy to distribute cocaine, we find the evidence was sufficient for a reasonable jury to find Oliver guilty beyond a reasonable doubt.

Similar to his insufficient-evidence argument, Oliver asserts that his verdict was against the weight of the evidence because the only evidence against him was Williams's uncorroborated testimony. "Upon the defendant's motion, the court may . . . grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). We review a district court's denial of a motion for a new trial for an abuse of discretion. *United States v. Lacey*, 219 F.3d 779, 784 (8th Cir. 2000). As detailed above, Williams's testimony was corroborated by independent evidence of Oliver's guilt. Because the evidence here did not "preponderate[] heavily against the verdict," the district court did not abuse its discretion in denying the motion for a new trial. *See United States v. Knight*, 800 F.3d 491, 504 (8th Cir. 2015).

G.

Finally, Oliver argues that his right to a fair trial was prejudiced by the ineffective assistance of his counsel because his counsel was mentally impaired as a result of his undergoing brain surgery two months before Oliver's trial. We normally defer ineffective-assistance claims to 28 U.S.C. § 2255 proceedings. *United States v. McAdory*, 501 F.3d 868, 872-73 (8th Cir. 2007). We review ineffective-assistance claims on direct appeal only "where the record has been fully developed, where not to act would amount to a plain miscarriage of justice, or where counsel's error is readily apparent." *United States v. Thompson*, 690 F.3d 977, 992 (8th Cir. 2012); *see also United States v. Sanchez-Gonzalez*, 643 F.3d 626, 628 (8th Cir. 2011)

(noting we review ineffective-assistance of counsel claims on direct appeal only in "exceptional cases").

Oliver's ineffective-assistance claim is not ripe for review. A developed record in the ineffective-assistance context requires that "the district court . . . created a record on the specific issue of ineffective assistance." *United States v. Wilder*, 597 F.3d 936, 944 (8th Cir. 2010). There is no such record in this case because the district court neither "convened an evidentiary hearing nor analyzed the potential merit of the claim." *Id.* Additionally, declining to consider this claim on direct appeal would not constitute a plain miscarriage of justice because Oliver "remains free to pursue [his] ineffective assistance claim through a section 2255 action." *See Sanchez-Gonzalez*, 643 F.3d at 629.

Furthermore, his counsel's errors are not "readily apparent" from his briefing. Some of the many errors Oliver asserts are easily refuted. For example, Oliver claims that his counsel failed to object to Williams's statement that Oliver offered Williams $200,000 to change his testimony. But, in fact, his trial counsel sought to exclude this testimony during a pretrial conference. Similarly, Oliver generally objects that his counsel should have probed more aggressively into Williams's criminal history. But Oliver's counsel did highlight that there was an outstanding felony charge against Williams in another county and that Williams absconded from his halfway house and was later found with drugs.

Some of Oliver's claims, however, are broader such that it is not readily apparent whether his counsel's decisions were deficient performance or legitimate trial strategy. *See United States v. Orr*, 636 F.3d 944, 952 (8th Cir. 2011) (noting we "generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel"). For example, Oliver asserts, without further elaboration or citation to the record, that his counsel "failed to adequately cross examine" "other witnesses that were called by the state." An error is not readily apparent when a defendant fails to allege specific aspects of inadequate cross-examination of certain witnesses. *See id.* at 952-53. For these reasons, this is

not one of the "exceptional cases" in which an ineffective-assistance claim is ripe for review on direct appeal.  *See Sanchez-Gonzalez*, 643 F.3d at 628.

## III.

For the foregoing reasons, we affirm.

_____