# United States Court of Appeals
## For the Eighth Circuit
_____

No. 24-2617
_____

United States of America

*Plaintiff - Appellee*

v.

Leonard James Tate

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of North Dakota - Western
_____

Submitted: March 20, 2025
Filed: June 5, 2025
_____

Before GRUENDER, BENTON, and SHEPHERD, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

A police officer walked into a hotel, smelled marijuana, and tracked the scent door to door until he identified the room from which he believed the scent was emanating. After learning more about the occupant of the hotel room, the officer obtained a warrant to search the room and found fentanyl, cash, firearm parts, and more. The occupant of the hotel room, Leonard Tate, was charged with three drug-related crimes. He moved to suppress the evidence found in the hotel room.

The district court[1] denied the motion and Tate pled guilty to one count of conspiracy, preserving his right to appeal the district court's suppression order. He now exercises that right. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

One afternoon in August 2022, Bismarck Police Department Patrol Officer[2] Zachary Collins walked into a local hotel as part of his routine patrol and smelled marijuana in the front entrance. He then "smell[ed] room doors," going door to door until he "was able to detect an odor of marijuana emitting from [R]oom #118." After identifying the scent coming from Room 118, he continued down the hall, smelling a few more doors in the area to confirm the marijuana smell was not coming from a nearby room.

Confident that the smell was coming from Room 118, Collins asked a hotel employee to provide him with a guest list. The list showed that Room 118 was being rented to Tate, who had presented a Michigan ID when he had checked into the hotel. Collins had investigated Tate before and knew Tate had a criminal history involving drugs and weapons. Tate's name did not appear in North Dakota's identification systems, which meant he could not legally possess marijuana in the state. See generally N.D. Cent. Code § 19-24.1. Collins also learned that Tate had originally booked his room for just one night, but had extended his stay an additional night. Finally, hotel staff told Collins that Tate had specifically requested that he be given a room with a safe and that he had informed staff his safe was not working when he first checked in.

Based on what he had learned, Collins sought a warrant to search Room 118. In his affidavit in support of the search warrant, Collins stated that he had identified

___

[1]The Honorable Daniel M. Traynor, United States District Judge for the District of North Dakota.

[2]Collins has since been promoted to investigator.

Room 118 based on smell—something he had been trained to do.  He also included what he had learned about Tate and noted that "it is not uncommon for individuals to come from Michigan to North Dakota to sell illicit drugs," that "it is not uncommon for these individuals to stay at hotel rooms, extend[ing] their stay day to day," and that "[i]t is common for safes to be used to store cash, illicit drugs[,] and firearms."  Finally, he briefly summarized Tate's applicable criminal history and stated his belief that there was probable cause to believe marijuana and related paraphernalia were present in Room 118.

The warrant was issued that evening and executed the following morning.  Tate, who had been alone in Room 118, was detained in the hotel lobby prior to the search of the room.  Inside Room 118, officers found 2,879 fentanyl pills and more than $15,000 in cash in the safe.  They also discovered firearm parts and a postal service receipt of a package shipped to Michigan.  Pursuant to department practice, Collins updated his affidavit to include the items discovered during the search and obtained an amended search warrant before seizing the items found.

Tate was charged with three drug-related crimes: (1) conspiracy to distribute and possess with intent to distribute controlled substances, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and 846, (2) possession with intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B), and 18 U.S.C. § 2, and (3) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1)(A) and 2.  He filed a motion to suppress, arguing that the search warrant was not supported by probable cause or the good-faith exception[3] and

---

[3]While evidence obtained in the absence of a valid warrant must generally be excluded, "[u]nder the . . . good-faith exception, disputed evidence will be admitted if it was objectively reasonable for the officer executing a search warrant to have relied in good faith on the judge's determination that there was probable cause to issue the warrant."  United States v. Norey, 31 F.4th 631, 635 (8th Cir. 2022) (citation omitted); see also United States v. Leon, 468 U.S. 897, 919-21 (1984) (establishing the good-faith exception).  Here, Tate argues not only that the warrant was invalid, but also that Officer Collins's reliance on it was not objectively reasonable.

that the evidence obtained because of the warrant—the fentanyl, cash, firearm parts, and paraphernalia—should thus be excluded. He also argued the search exceeded the scope of the warrant. Following a hearing, the district court determined the warrant was supported by sufficient probable cause, its scope was not exceeded during the search, and the good-faith exception would apply even if probable cause were lacking. The court thus denied the motion. Pursuant to a plea agreement that preserved his right to appeal the denial of the motion to suppress, Tate pled guilty to the conspiracy charge in exchange for the dismissal of the other two charges. He was sentenced to 48 months' imprisonment and 4 years of supervised release and now appeals the denial of the motion to suppress.

## II.

On appeal, Tate argues the district court erred in denying the motion to suppress because the search warrant was not supported by probable cause. He claims the good-faith exception to the search warrant requirement did not apply. He further argues that even if the search warrant were properly granted, the officers exceeded its scope while executing it. "In an appeal from a denial of a motion to suppress, we review the district court's factual findings for clear error and its legal conclusions de novo." United States v. Juneau, 73 F.4th 607, 613 (8th Cir. 2023) (citation omitted).

## A.

We first consider Tate's argument that the search warrant was invalid because it was not supported by probable cause. We review de novo the district court's determination that probable cause existed. See United States v. Williams, 616 F.3d 760, 764 (8th Cir. 2010) (citation omitted); United States v. Oliver, 950 F.3d 556, 564 (8th Cir. 2020). "In reviewing whether a warrant was supported by probable cause, our role is to ensure that the issuing judge 'had a "substantial basis for concluding that probable cause existed."'" Juneau, 73 F.4th at 614 (citations omitted). Reviewing courts pay "great deference" to the issuing judge's initial determination of probable cause. Oliver, 950 F.3d at 564 (citation omitted).

Probable cause exists if, "under the totality of the circumstances, a showing of facts can be made 'sufficient to create a fair probability that evidence of a crime will be found in the place to be searched.'" United States v. Johnson, 848 F.3d 872, 876 (8th Cir. 2017) (citation omitted). Because the issuing judge relied solely on Collins's affidavit to determine whether probable cause existed, "only the information 'found within the four corners of the affidavit may be considered'" in our analysis. See Juneau, 73 F.4th at 614 (citation omitted).

Here, the smell alone provided substantial support for the existence of probable cause. We have routinely allowed the scent of marijuana to provide a basis for probable cause in the vehicle context. See, e.g., United States v. Williams, 955 F.3d 734, 737 (8th Cir. 2020) (determining officers had probable cause to search a defendant's vehicle "because [an officer] smelled marijuana when [the defendant] opened the car door"); United States v. Walker, 840 F.3d 477, 484 (8th Cir. 2016) (noting that the smell of unburned marijuana in a vehicle "provided probable cause to search the car"); United States v. Beard, 708 F.3d 1062, 1065 (8th Cir. 2013) ("The smell of marijuana in a vehicle can establish probable cause . . . ."); United States v. Peltier, 217 F.3d 608, 610 (8th Cir. 2000) ("[T]he smell of marijuana gave the deputy probable cause to search Peltier's truck for drugs."). And we have applied the same analysis when the odor emits from an apartment. See Miller v. Sigler, 353 F.2d 424, 427 (8th Cir. 1965) (noting that an officer's statement that he detected the smell of marijuana coming from a particular room was sufficient to establish probable cause to search the room). This is consistent with the Supreme Court's longstanding guidance that the presence of odors "might very well be found to be evidence of most persuasive character." See Johnson v. United States, 333 U.S. 10, 13 (1948); see also Arizona v. Gant, 556 U.S. 332, 339 (2009) (noting that an officer who smelled burnt marijuana and saw an envelope marked "Supergold," a name associated with marijuana, had probable cause to conduct a search (citing New York v. Belton, 453 U.S. 454 (1981)).

Tate contends that Officer Collins did not have sufficient training to identify the marijuana scent with such specificity. Tate faults the officer's door-to-door

smelling process for "lacking in corroboration or the indicia of reliability that would apply to the same scent tracking if conducted by a certified canine." But Tate has not pointed to—and we have not found—any case requiring *officers* be subject to the same training standards as *canines* for identifying a common scent such as marijuana. Compare United States v. Sundby, 186 F.3d 873, 876 (8th Cir. 1999) (noting that a dog's positive indication is sufficient to establish probable cause *if* the dog "has been trained and certified to detect drugs"), with Peltier, 217 F.3d at 610 (affirming determination of probable cause based on an officer smelling marijuana without any mention of the officer's training). But see also Walker, 840 F.3d at 482 (noting that officers who smelled marijuana "had been trained to detect [the odor of marijuana] during their training as police officers"). To the extent any training is necessary to track the scent of marijuana, Officer Collins met that requirement. He attested in his affidavit that he was a "trained and licensed" officer with about eight years of experience who had received training "in the recognition of illicit drugs and drug paraphernalia" and who was "familiar with the odor of marijuana because of [his] training and experience as a police officer." We are satisfied that nearly a decade of experience in law enforcement and some drug identification training sufficiently qualified Officer Collins to identify the scent of marijuana.

Tate further argues that our cases on the odor of marijuana lack persuasive force because *identifying* the smell of marijuana is different from *tracking* the smell door to door. This distinction is relevant but not dispositive. Human experience makes clear that a scent is generally strongest from the place it emanates. See Miller, 353 F.2d at 426-27 (affirming the existence of probable cause based in part on officer's statement that "he had made several trips to the described apartments and the odor of marijuana was readily apparent *outside the door of [the defendant]'s room*" (emphasis added)). While pinpointing a smell to a particular room may not always be possible, Officer Collins swore in his affidavit that he successfully identified which room was emitting the marijuana scent, and no reason is offered to doubt his veracity. See id. at 427 ("[W]hen an officer personally states that he detected the odor of marijuana from a particular room in an apartment dwelling,

certainly this is sufficient probable cause to issue the requested warrant for a search of the room.").

Nor does the lack of marijuana in Tate's room during the search disprove probable cause. Officer Collins noticed the marijuana smell at Tate's hotel room door around 4:20 p.m. The officers did not search Tate's room until about 9:35 a.m. the following day. The marijuana may well have been consumed or removed during that time. Moreover, the probable cause determination was not made based on scent alone. Officer Collins further stated in the affidavit that Tate had come from Michigan, had specifically inquired about the safe in his room, had extended his stay day by day, had a criminal history involving drugs, and was not legally allowed to possess marijuana in North Dakota. Under the totality of the circumstances, the issuing judge had a substantial basis for determining that evidence of a crime would be found in Tate's hotel room, see Johnson, 848 F.3d at 876, and thus the district court did not err in denying Tate's motion to suppress.[4]

B.

Tate further argues that even if the warrant was valid, the officers exceeded its scope in executing the warrant. "We review *de novo* whether a seizure violated the scope of a warrant and, therefore, violated the Fourth Amendment." Oliver, 950 F.3d at 564.

Here, the officers' search was within the scope of the warrant. A lawful search warrant "extends to all areas and containers in which the object of the search may be found." United States v. Saddler, 19 F.4th 1035, 1042 (8th Cir. 2021) (citation omitted). Because the search warrant here authorized law enforcement to search for "marijuana" and "paraphernalia to ingest marijuana," it allowed officers "to search in any closet, container, or other closed compartment in the [hotel room] large

---

[4]Because we resolve this issue on the existence of probable cause, we need not consider whether the good-faith exception to the warrant requirement applied.

enough to contain" marijuana or such paraphernalia. <u>See</u> <u>United States v. McManaman</u>, 673 F.3d 841, 848 (8th Cir. 2012). Officer Collins testified that the safe—which was about 12 inches wide, 12 inches long, and 6 inches tall—was large enough to hold marijuana. Once officers were lawfully in Tate's hotel room with lawful access to the items in the safe, the plain view doctrine permitted them to "seize . . . without a warrant" those items in which the "incriminating character [was] immediately apparent." <u>See</u> <u>United States v. Class</u>, 883 F.3d 734, 737 (8th Cir. 2018) (citation omitted). Thus, even if the officers had not sought a second search warrant,[5] they would not have exceeded the scope of the first search warrant in seizing items from Tate's hotel room because the incriminating character of the items seized—fentanyl, firearm parts, cash, and related accessories—was immediately apparent. <u>See</u> <u>id.</u> The district court therefore did not err in denying the motion to suppress on this basis as well.

## III.

For the reasons stated above, we affirm the judgment of the district court.

_____

_____

[5]The officers' decision to seek a second search warrant prior to seizing the items in Tate's hotel room was a permissible and commendable act of restraint but has no constitutional significance in this case.